ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| ZELVIC ENTERPRISES, INC.<br><br>Apelante<br><br>V.<br><br>AJ SERVICE STATION CORP.<br><br>Apelado | TA2025AP00053 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm. CZ2023CV00085<br><br>Sobre:<br>Cobro de dinero<br>Ejecución de hipoteca |

Panel integrado por su presidenta, la juez Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Ortiz Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de abril de 2026.

Comparece ante nos Zelvic Enterprises Inc. (Zelvic Enterprises; parte apelante) mediante *Apelación* para solicitarnos la revisión de la *Orden*, emitida y notificada el 2 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[1] Mediante la *Orden*, el TPI dio por renunciadas las cantidades reclamadas por Zelvic Enterprises, en lo relativo a los intereses y honorarios de abogado, por incumplir con una orden emitida el 17 de marzo de 2025 en la Conferencia Sobre el Estado de los Procedimientos. Por otro lado, solicita la revisión de la *Sentencia*, emitida y notificada el 27 de mayo de 2025, mediante la cual el TPI condenó a AJ Service Station Corp. (AJ Service; parte apelada) al pago de $13,040.00 por concepto de intereses acumulados, no obstante, desestimó con perjuicio las demás causas de acción presentadas por Zelvic Enterprises y le impuso el pago de la cantidad de $5,000.00, por concepto de honorarios por temeridad.[2] Por último, solicita la revisión de la *Resolución Interlocutoria,* emitida y notificada el 27 de mayo de 2025,

---

[1] SUMAC TPI, a la Entrada Núm. 95.
[2] SUMAC TPI, a la Entrada Núm. 101.

mediante la cual el TPI declaró No Ha Lugar unas mociones de reconsideración, presentadas el 19 de mayo de 2025, por la parte apelante.[3]

Por los fundamentos que expondremos a continuación, se revocan la *Sentencia, Orden, y Resolución Interlocutoria* apeladas.

**I**

El 25 de mayo de 2023, Zelvic Enterprises incoó una *Demanda en Cobro de Dinero y Ejecución de Hipoteca*.[4] Señaló que le vendió a AJ Service un inmueble de la siguiente descripción:

> RUSTICA: Parcela de terreno con un área superficial de tres mil quinientos cincuenta y dos punto noventa y uno (3,552.91) metros cuadrados. Colindando por el Norte, con la finca principal de la cual se segrega; por el Sur, con la Sucesión de Ramón Fuentes; por el Este, con una faja de terreno dedicada a uso público y por el Oeste, con Juan Morales. Finca número 3854, inscrita al folio 233 del tomo 76 de Corozal, del Registro de la Propiedad, Sección de Barranquitas. Núm. Catastral: 168-042-009-10-000.

Indicó que el precio pactado por las partes fue por la suma de $400,000.00, de la cual AJ Service satisfizo $20,000.00, comprometiéndose a satisfacer el balance de $380,000.00 en pagos mensuales por la cantidad de $3,000.00 y cinco (5) pagos anuales por la cantidad de $40,000.00, comenzando el primer pago anual el 5 de marzo de 2021. Además, sostuvo que, de no verificarse el pago de los plazos anuales, AJ Service se comprometió a pagar el 8% de intereses. Por otra parte, alegó que, en el año 2020, AJ Service constituyó una hipoteca sobre el inmueble objeto de la compraventa, en garantía de un pagaré, por la suma de $380,000.00, la cual consta inscrita en el Registro de la Propiedad. Adujo que AJ Service incumplió con el acuerdo de pago al dejar de pagar las anualidades de $40,000.00, adeudando la suma de $238,000.00 de principal; $7,655.35 de intereses acumulados, así como aquellos intereses que se acumulen hasta el saldo total de la deuda; y $38,000.00 por concepto de honorarios de abogado. En vista de lo anterior, solicitó que se

---

[3] SUMAC TPI, a la Entrada Núm. 100.
[4] SUMAC TPI, a la Entrada Núm. 1.

dictara sentencia condenando a AJ Service al pago de las sumas reclamadas; intereses acumulados; así como honorarios de abogado, gastos y costas. En su defecto, solicitó la ejecución y venta en pública subasta del bien inmueble ofrecido en garantía de la obligación para, con el producto de dicha venta, pagar hasta donde alcance la obligación objeto de la reclamación.

Posteriormente, el 19 de julio de 2023, AJ Service presentó su *Contestación a Demanda,* en la cual incluyó una reconvención.[5] Mediante esta, aceptó las alegaciones esbozadas en su contra. No obstante, negó la cantidad reclamada por Zelvic Enterprises. Por otro lado, en la reconvención, adujo que Zelvic Enterprises ofreció la propiedad en venta a terceros de manera fraudulenta y de mala fe. Asimismo, señaló que le ha ofrecido a Zelvic Enterprises el pago de la deuda pero que este no ha aceptado dicha oferta. Ante ello, solicitó que se condenara a la parte apelante al pago de la cantidad de $50,000.00 por concepto de daños y perjuicios, así como una cantidad de $10,000.00 por concepto de honorarios de abogado.

En respuesta, el 24 de julio de 2023, Zelvic Enterprises instó una *Contestación a Reconvención*.[6] En esencia, negó las alegaciones esbozadas en su contra y afirmó que la reconvención dejaba de exponer una reclamación que justificara la concesión de un remedio. En consecuencia, solicitó que se declarara No Ha Lugar la reconvención interpuesta por AJ Service y se declarara Ha Lugar la *Demanda*.

Presentado el *Informe Preliminar de Conferencia con Antelación a Juicio,*[7] el 21 de agosto de 2024, se celebró la Conferencia con Antelación al Juicio. Según surge de la *Minuta* del 26 de agosto de 2024, el TPI dispuso que, una vez la parte apelada contestó la *Demanda* y aceptó el retraso, esta estuvo consignando en el tribunal los pagos.[8] Ante ello, expresó que la única controversia era en cuanto a los intereses. Producto de la

---

[5] SUMAC TPI, a la Entrada Núm. 9.
[6] SUMAC TPI, a la Entrada Núm. 13.
[7] SUMAC TPI, a la Entrada Núm. 57 y 58.
[8] SUMAC TPI, a la Entrada Núm. 61.

Conferencia con Antelación al Juicio, el TPI señaló el juicio en su fondo para los días 30 y 31 de enero de 2025.

Luego de varios trámites procesales innecesarios pormenorizar, el 17 de enero de 2025, AJ Service presentó una *Moción de Desestimación*.[9] Mediante esta, alegó que la deuda de $400,000.00 vencía en marzo de 2025 y que había sido pagada en su totalidad. Indicó que Zelvic Enterprises no quiso recibir los pagos y que se opuso a que se consignaran los pagos en el TPI. A tenor, solicitó que se desestimara la causa de acción, así como que se le impusiera a la parte apelante el pago de costas y honorarios de abogado por temeridad por no recibir los pagos ofrecidos antes de radicar la *Demanda.*

Pendiente lo anterior, el 28 de enero de 2025, Zelvic Enterprises presentó una *Urgente Solicitud de Suspensión de Vista en su Fondo,* así como *una Moción para que se Acepte la Solicitud de Suspensión de Vista en su Fondo y Moción en Cumplimiento de Orden*.[10] Mediante dichas mociones, expresó que no había podido corroborar la cantidad que AJ Service había consignado, la cual debía incluir los $38,000.00 dólares acordados contractualmente como honorarios de abogado. Ante ello, solicitó la suspensión de la vista y un término de treinta (30) días para confirmar la deuda. Por otro lado, sostuvo que no había expuesto su posición en cuanto a la *Moción de Desestimación* debido a una situación médica.

Así las cosas, ese mismo día, el TPI emitió una *Orden* concediéndole a la parte apelante hasta ese mismo día para que informara la razón por la cual el caso no debía ser desestimado.[11]

En cumplimiento con lo ordenado, en esa misma fecha, la parte apelante presentó *Urgente Reconsideración y en Cumplimiento de Orden*.[12] En su escrito, adujo que, aun tomando como correcta la alegación de la parte apelada, en cuanto a que había pagado la totalidad de lo

---

[9] SUMAC TPI, a la Entrada Núm. 67.
[10] SUMAC TPI, a la Entrada Núm. 73 y 74.
[11] SUMAC TPI, a la Entrada 76.
[12] SUMAC TPI, a la Entrada Núm. 77.

adeudado en la hipoteca, lo anterior, no la eximía de su obligación de pagar los honorarios de abogado según pactados, así como los intereses por atrasos y mora. En consecuencia, solicitó que se suspendiera el juicio pautado para el 30 y 31 de enero de 2025 y se declarara No Ha Lugar la *Moción de Desestimación* presentada por la parte apelada. Además, solicitó que se le ordenara a la División de Cuentas del TPI a certificar la cantidad de fondos consignados a su favor y que, una vez recibida la certificación de la División de Cuentas, proveyera término para que pudiera informar la cantidad que la parte apelada continuaba adeudando. Así las cosas, el 29 de enero de 2025, el TPI emitió y notificó *Orden* para que las partes comparecieran preparados para la celebración de la vista.[13]

Posteriormente, el 30 de enero de 2025, ocurrieron dos (2) eventos procesales. El primer evento fue que Zelvic Enterprises presentó un escrito intitulado P*ara que se den por probados ciertas alegaciones y hechos contenidos en la demanda*, mediante la cual solicitaron que se dieran por admitidas algunas de las alegaciones esbozadas en la *Demanda*.[14] Sobre el particular, solicitó que se dieran por admitidas y probadas las alegaciones 3, 4, 5, 6, 7 y 9 de la *Demanda*, toda vez que las mismas fueron aceptadas por la parte apelada en su *Contestación a Demanda*. En consecuencia, mediante *Orden* emitida y notificada el mismo día, el TPI dio por probadas dichas alegaciones.[15] Asimismo, en cuanto a la alegación número 7, dispuso que se dio por probado que, a la fecha de la radicación de la *Demanda*, existía un atraso en los pagos.

Por otro lado, el segundo evento procesal fue que, aunque el caso estaba pautado ese mismo día para el juicio en su fondo, dicho juicio no se llevó a cabo, celebrándose en su lugar una vista ordinaria. Según surge de la *Minuta* del 7 de febrero de 2025, Zelvic Enterprises indicó que la deuda quedó reducida a los intereses y, si procedían los honorarios pactados en virtud del contrato de compraventa y el pagaré.[16] Por su parte, AJ Service

---

[13] SUMAC TPI, a la Entrada Núm. 78.
[14] SUMAC TPI, a la Entrada Núm. 81.
[15] SUMAC TPI, a la Entrada Núm. 82.
[16] SUMAC TPI, a la Entrada Núm. 85.

alegó que existía controversia sobre hasta cuándo se computaban los intereses, si era desde la consignación o es desde que la parte los recibía. Por otro lado, el TPI reiteró que se declaró No Ha Lugar la solicitud de desestimación de AJ Service. Además, ordenó a Zelvic Enterprises a presentar la solicitud de retiro de fondos por escrito y señaló vista para el 17 de marzo de 2025.

Posteriormente, el 19 de febrero de 2025, el TPI emitió una *Certificación* mediante la cual certificó que la cantidad consignada fue de $110,210.08, desglosado en $110,000.00 por concepto de principal y $210.08 por concepto de intereses.[17] En vista de lo anterior, el 21 de febrero de 2025, el TPI emitió y notificó *Orden* mediante la cual ordenó que la parte apelante expresara la cuantía solicitada en el término de tres (3) días.[18]

En cumplimiento con lo ordenado, ese mismo día, Zelvic Enterprises presentó una *Moción en Cumplimiento de Orden Relacionada a Solicitud de Retiro de Fondos Consignados,* mediante la cual solicitó el retiro de los fondos consignados, a los fines de acreditarlos al balance de la reclamación.[19] En específico, solicitó el retiro de la suma de $101,000.00 para ser aplicados al balance de principal e intereses acumulados, sin perjuicio de continuar la acción de cobro por el balance de la deuda más los intereses acumulados al interés por mora pactado por las partes. En consecuencia, mediante *Orden* emitida y notificada el 26 de febrero de 2025, el TPI ordenó a la Unidad de Cuentas a emitir un cheque por la cantidad de $101,000.00, más los intereses, si aplicaba, a favor de Zelvic Enterprises.[20]

De ahí, el 17 de marzo de 2025, se celebró una Conferencia Sobre el Estado de los Procedimientos. Según surge de la *Minuta* del 9 de abril de 2025, el TPI apercibió que Zelvic Enterprises no explicó por qué procedían los honorarios de abogado.[21] Asimismo, expresó que la única

---

[17] SUMAC TPI, a la Entrada Núm. 88.
[18] SUMAC TPI, a la Entrada Núm. 90.
[19] SUMAC TPI, a la Entrada Núm. 91.
[20] SUMAC TPI, a la Entrada Núm. 92.
[21] SUMAC TPI, a la Entrada Núm. 105.

controversia pendiente era la relativa a los intereses. Sobre el particular, expresó que no había controversia en cuanto a que se adeudaban los intereses, no obstante, existía controversia en cuanto a la cuantía. Ante ello, emitió orden, mediante la cual le concedió a Zelvic Enterprises hasta el 1 de abril de 2025 para someter una moción a los fines de determinar desde cuándo eran los intereses que se adeudaban. Por otro lado, le concedió a AJ Service hasta el 30 de abril de 2025 para que presentara su oposición. Además, señaló vista para el 17 y 18 de julio de 2025.

Luego, el 1 de mayo de 2025, AJ Service presentó *Moción en Oposición al Pago de Intereses y Honorarios de Abogado*.[22] En esta, adujo que Zelvic Enterprises debió de presentar una moción, en cumplimiento con la orden emitida por el TPI en la Conferencia Sobre el Estado de los Procedimientos del 17 de marzo de 2025. Sostuvo que, al incumplir con dicha orden, la parte apelante no expuso su posición en cuanto a los intereses y honorarios de abogado, por lo que se entendían como renunciados.

En vista de lo anterior, el 2 de mayo de 2025, el TPI emitió y notificó una *Orden*.[23] Mediante esta, dispuso que Zelvic Enterprises incumplió con la *Orden*, emitida el 17 de marzo de 2025, para presentar moción dispositiva a los fines de aclarar desde cuándo procedía el pago de intereses y honorarios de abogado. En consecuencia, expresó que dichas cantidades se entendían como renunciadas y declaró Ha Lugar la *Moción en Oposición al Pago de Intereses y Honorarios de Abogado*, presentada el 1 de mayo de 2025, por la parte apelada. Asimismo, determinó que el asunto de los intereses era el único que quedaba por resolver para disponer del caso, por lo que ordenó a AJ Service a presentar un proyecto de Sentencia en un término de diez (10) días.

Inconforme, el 19 de mayo de 2025, Zelvic Enterprises presentó *Moción de Reconsideración y Oposición a Moción Sobre el Pago de*

---

[22] SUMAC TPI, a la Entrada Núm. 94.
[23] SUMAC TPI, a la Entrada Núm. 95.

*Intereses y Honorarios de Abogado* y un *Suplemento a Moción de Reconsideración*.[24] En lo pertinente, adujo que el TPI no informó que la moción había que radicarla obligatoriamente ni tampoco estableció que la negativa de radicar dicha moción constituiría o equivaldría a renunciar a su derecho de recobrar honorarios de abogado e intereses. En cuanto al pago de intereses por mora, sostuvo que el pagaré y la escritura de hipoteca indican que se aplicaría una taza de interés del 8% en caso de incumplir con algún pago mensual o anual requerido. Indicó que los intereses que se reclaman comenzaron a acumularse desde la fecha en que se presentó la *Demanda*, el 25 de mayo de 2023. Por otro lado, en lo relativo a los honorarios de abogado, adujo que, tanto el pagaré como la escritura de hipoteca, disponen que, en caso de ser necesaria la acción judicial para el cobro de la obligación, se aplicaría una suma mínima equivalente al 10% del principal del pagaré por concepto de indemnización para responder por costas, gastos y honorarios de abogado. En mérito de lo anterior, solicitó que dejara sin efecto la *Orden*, emitida el 2 de mayo de 2025. Conviene mencionar que, en esa misma fecha, Zelvic Enterprises presentó una *Moción Informativa Sometiendo Anejo*, a la cual le anejó el estado de cuenta sobre los intereses adeudados.[25]

En respuesta, el 22 de mayo de 2025, el TPI emitió y notificó *Orden* mediante la cual dispuso "nada que proveer", toda vez que la *Orden* fue dictada el 2 de mayo de 2025 y que las mociones de reconsideración fueron presentadas fuera de término.[26] Posteriormente, el 27 de mayo de 2025, el TPI emitió y notificó una *Resolución Interlocutoria* declarando No Ha Lugar las mociones de reconsideración presentadas por la parte apelante.[27]

Luego, en esa misma fecha, el TPI emitió y notificó una *Sentencia,* mediante la cual determinó que la única controversia era sobre la cuantía de intereses acumulados, conforme fue pactada.[28] Sostuvo que no hay

---

[24] SUMAC TPI, a la Entrada Núm. 96 y 98.
[25] SUMAC TPI, a la Entrada Núm. 97.
[26] SUMAC TPI, a la Entrada Núm. 99.
[27] SUMAC TPI, a la Entrada Núm. 100.
[28] SUMAC TPI, a la Entrada Núm. 101.

controversia en cuanto a que el vencimiento de la deuda fue en marzo de 2025; que el contrato no menciona el pago de honorarios de abogado; y que hubo atrasos de pagos por la parte apelada. A tenor, condenó a la parte apelada a satisfacer la cuantía adeudada en intereses acumulados, ascendentes a $13,040.00, toda vez que dicha cantidad fue aceptada por esta. A su vez, desestimó con perjuicio las demás causas de acción presentadas por Zelvic Enterprises. Asimismo, desestimó con perjuicio la reconvención presentada por AJ Service. Por último, el TPI le impuso a Zelvic Enterprises el pago de la cantidad $5,000.00, en concepto de honorarios por temeridad. Conviene mencionar que se dejaron sin efecto las vistas señaladas para el 17 y 18 de julio de 2025.

Inconforme, el 26 de junio de 2025, Zelvic Enterprises presentó un recurso de *Apelación*, en el cual esgrimió la comisión de los siguientes nueve (9) errores:

> PRIMERO: Erró el Honorable Tribunal de Primera Instancia y abusó de su discreción al sancionar a la parte Apelante, eliminando o teniendo por renunciadas varias de sus alegaciones, por razón de la representación legal de la parte Apelante haber "...incumplido con la Orden de este tribunal de presentar moción dispositiva, en o antes del 1 de abril de 2025, en apoyo de su contención sobre la fecha o término desde cuando procede el pago de intereses y honorarios de abogado...". [Ent. #95]
>
> SEGUNDO: SEGUNDO: Erró el Honorable Tribunal de Primera Instancia y abusó de su discreción al sancionar a la parte Apelante, eliminando o teniendo por renunciadas varias de sus alegaciones, (respecto a la fecha o término desde cuando procede el pago de intereses y sobre el pago de costas, gastos y honorarios de abogado), sin antes notificar directa y personalmente a dicha parte, conforme la jurisprudencia y doctrina avalada por Nuestro Tribunal Supremo. Ver HRS Erase, Inc. v. Centro Médico del Turabo, Inc., 205 DPR 689, 701 (2020).
>
> TERCERO: Erró el Honorable Tribunal de Primera Instancia y abusó de su discreción al sancionar a la parte Apelante, eliminando o teniendo por renunciadas varias de sus alegaciones, por razón de la representación legal de la parte Apelante haber incumplido con una Orden del tribunal, sin anterior a ello tomar otras medidas disciplinarias en contra de los abogados de la parte Apelante.
>
> CUARTO: Erró el Honorable Tribunal de Primera Instancia y abusó de su discreción al sancionar a la parte Apelante, eliminando o teniendo por renunciadas varias de sus alegaciones, sin anterior a ello haberle

notificado, apercibido e informado directa y personalmente a la parte Apelante, sobre las posibles consecuencias y repercusiones en caso de continuar desatendiendo las [ó]rdenes del Foro.

QUINTO: Erró el Honorable Tribunal de Primera Instancia y abusó de su discreción al eliminar o tener por renunciada las alegaciones de la Apelante, mediante las cuales solicitaba el pago de costas, gastos y honorarios de abogado por la suma de $38,000.00 dólares, como indemnización, por razón de la parte Apelante tener que radicar demanda en cobro de dinero y ejecución de hipoteca.

SEXTO: Erró el Honorable Tribunal de Primera Instancia y abusó de su discreción al eliminar o tener por renunciada las alegaciones de la Apelante, mediante las cuales solicitaba el pago de intereses al ocho (8%) porciento, conforme aceptado y ordenado mediante la contratación habida entre las partes y debido a la Apelante tener que radicar demanda en cobro de dinero y ejecución de hipoteca.

SÉPTIMO: Erró el Honorable Tribunal de Primera Instancia y abusó de su discreción , al dictar Sentencia Final, motu proprio, sin celebrar vista a los fines de escuchar la prueba sobre la falta de pago y la suma que por intereses acumulados por mora debía cubrir y pagar la parte Apelada, así como el pago de las costas, gastos y honorarios de abogado, como indemnización , que la parte Apelada se había obligado a realizar, en la eventualidad de que la Apelante tuviese que instar reclamación judicial.

OCTAVO: Erró el Honorable Tribunal de Primera Instancia y abusó de su discreción al dictar Sentencia Final, encontrando que la parte Apelante actuó temerariamente y al sancionarle con la imposición y pago de $5,000.00 dólares, a favor de la Apelada.

NOVENO: Erró el Honorable Tribunal de Primera Instancia y abusó de su discreción, al tomar la "Moción en Oposición al Pago de Intereses y Honorarios de Abogado", radicada por la parte Apelada, [Ent. #94], como una moción en solicitud de sentencia sumaria o algún otro tipo de moción dispositiva.

Mediante *Resolución*, emitida el 3 de julio de 2025, notificada el 8 del mismo mes y año, concedimos a la parte apelada hasta el 29 de julio de 2025 para expresarse en torno al recurso. Superado el término, sin que la parte apelada presentara su alegato, procedemos a resolver, sin el beneficio de su comparecencia.

## II

En nuestro ordenamiento jurídico se favorece la política judicial de que los casos se ventilen en sus méritos. *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 264 (2021); *Mercado Figueroa v. Mun. de San Juan*, 192 DPR

279, 287-288 (2015). Tal principio ha de ir en armonía con el propósito de que los pleitos se tramiten de forma justa, rápida y económica. *Id.* Es decir, que, aunque se favorece la ventilación de los casos en sus méritos, ello "no significa que una parte adquiera el derecho a que su caso tenga vida eterna en los tribunales manteniendo a la otra parte en un estado de incertidumbre, sin más excusa para su falta de diligencia e interés en su tramitación que una escueta referencia a circunstancias especiales". *Mun. de Arecibo v. Almac. Yakima*, 154 DPR 217, 221-222 (2001).

Como regla general, los tribunales están obligados a desalentar la práctica de falta de diligencia y de incumplimiento con sus órdenes mediante su efectiva, pronta y oportuna intervención. Además, tienen el poder discrecional, según las Reglas de Procedimiento Civil, de desestimar una demanda o eliminar las alegaciones de una parte. Particularmente, la Regla 39.2 (a) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2 (a), faculta a los tribunales para desestimar causas de acción debido al incumplimiento de las partes con sus órdenes. Dicha regla lee como sigue:

> (a) Si el demandante deja de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a solicitud del demandado podrá decretar la desestimación del pleito o de cualquier reclamación contra él, o la eliminación de las alegaciones, según corresponda. **Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o la abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que ésta no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación, que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.** (Énfasis suplido).
>
> […]

A esos efectos, el Tribunal Supremo de Puerto Rico ha expresado que, una vez se plantea ante el TPI una situación que amerite la imposición de sanciones, este debe amonestar primeramente al abogado de la parte. *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 297 (2012). Si este curso de acción no produce un resultado positivo procede desestimar la demanda o eliminar las alegaciones, luego de que la parte haya sido debidamente informada y apercibida de las consecuencias que puede acarrear el incumplimiento. *Id*. Mas aun, en aras de garantizar el debido proceso de ley, el tribunal está obligado a seguir dicho procedimiento antes de ordenar la desestimación de la demanda o la eliminación de las alegaciones. De lo contrario, se violaría el debido proceso de ley, asunto que encuentra apoyo en las siguientes expresiones de nuestro Tribunal Supremo:

> […] Desestimar de inmediato una demanda, o una contestación, como medio de aplicar sanción al proceder o a una actitud del abogado [o abogada] en el curso del pleito, tiene el efecto de privar a un ciudadano [o ciudadana] de la función judicial de adjudicación que forma parte de nuestra estructura constitucional, privándole de la oportunidad de un día en corte para hacer valer en los méritos la legitimidad de su derecho a reclamar si es [parte] demandante, o la legitimidad y mérito de una defensa, si es [parte] demandada]. Este es un valor en el orden social demasiado apreciable para ser prontamente sacrificado, aun cuando la sanción se dé en aras del pronto despacho de los asuntos radicados y de una rápida administración de justicia. Si los pleitos judiciales se desestimaren por esta vía indistintamente, se habrán despachado los asuntos, no hay duda, pero tal vez no habría quedado mucho de justicia a impartir. *Ramírez de Arellano v. Srio. de Hacienda*, 85 DPR 823, 829 (1962).

Por lo anterior, la determinación de desestimar una demanda o eliminar las alegaciones de una parte debe tomarse juiciosa y apropiadamente. *Mejías et al. v. Carrasquillo et al.*, supra. En ese sentido, se debe considerar que:

> [L]a desestimación de un caso como sanción, debe prevalecer únicamente en situaciones extremas en las cuales haya quedado demostrado de manera clara e inequívoca la desatención y el abandono total de la parte con interés y "después que otras sanciones hayan probado ser ineficaces en el orden de administrar justicia y, en todo caso, no debería procederse a ella sin un previo apercibimiento". *Mun. de Arecibo v. Almac. Yakima*, supra, pág. 222, citando a *Ramírez de Arellano v. Srio. de Hacienda*, supra, págs. 829-830.

En vista de ello, es menester que el tribunal sea progresivo en el uso de sanciones disciplinarias. Es decir, las sanciones deben ir de menor a mayor grado de severidad, para no afectar de plano la reclamación de una parte. *Díaz Rivera v. AEELA,* 210 DPR 974 (2022)*,* a la pág. 978.

**III**

En el presente caso, la parte apelante, mediante sus nueve (9) señalamientos de error, nos invita a concluir que el TPI incidió al sancionar a la parte apelante, eliminando o teniendo por renunciadas varias de sus alegaciones, por razón de incumplir con la orden emitida el 17 de marzo de 2025, a los fines de presentar una moción dispositiva, en o antes del 1 de abril de 2025, en apoyo de su contención sobre la fecha o término desde cuando procedía el pago de intereses y honorarios de abogado. Luego de evaluar la totalidad de los autos ante nuestra consideración, hemos entendido que, por estar íntimamente relacionados, atenderemos en conjunto los primeros siete (7) señalamientos de error, así como el *noveno* señalamiento. Dicho lo anterior, procedemos a discutir la procedencia de los antedichos señalamientos.

Mediante sus primeros siete (7) señalamientos de error, así como el *noveno*, la parte apelante plantea que el TPI erró al imponer dicha sanción sin antes notificar la orden a la parte apelante ni tomar otras medidas disciplinarias en su contra. Asimismo, arguye que erró el TPI al no notificar, apercibir, e informar a la parte apelante sobre las posibles consecuencias y repercusiones en caso de continuar desatendiendo las órdenes del foro *a quo*. Asimismo, alega que el TPI incidió al eliminar o tener por renunciadas las alegaciones de la parte apelante, mediante las cuales solicitaba el pago de costas, gastos y honorarios de abogado por la suma de $38,000.00 y el pago de intereses al 8%, conforme el contrato habido entre las partes, debido a la parte apelante tener que radicar demanda en cobro de dinero y ejecución de hipoteca. Por otra parte, arguye que erró el TPI al dictar *Sentencia* sin celebrar vista a los fines de escuchar la prueba sobre la falta de pago y la suma que debía la parte apelada por concepto

de intereses acumulados, así como costas, gastos y honorarios de abogado. Finalmente, plantea que erró el foro primario al tomar la *Moción en Oposición al Pago de Intereses y Honorarios de Abogado*, radicada por la parte apelada, como una moción en solicitud de sentencia sumaria o algún otro tipo de moción dispositiva.

Conviene destacar que, según relatamos previamente, el caso del título inició cuando la parte apelante presentó una *Demanda* contra la parte apelada sobre cobro de dinero. Mediante la *Contestación a Demanda* presentada por la parte apelada, esta aceptó las alegaciones esbozadas en su contra, excepto la cantidad reclamada por Zelvic Enterprises. Luego, en la Conferencia Sobre el Estado de los Procedimientos, celebrada el 17 de marzo de 2025, el TPI expresó que no había controversia en cuanto a que AJ Service adeudaba los intereses, no obstante, existía controversia en lo pertinente a la cuantía. Ante ello, el TPI emitió orden en la cual concedió a Zelvic Enterprises hasta el 1 de abril de 2025 para someter una moción a los fines de determinar desde cuándo eran los intereses que se adeudaban. Así las cosas, el 1 de mayo de 2025, AJ Service presentó *Moción en Oposición al Pago de Intereses y Honorarios de Abogado* en la cual adujo que Zelvic Enterprises incumplió con la orden emitida por el TPI en la Conferencia Sobre el Estado de los Procedimientos y que, al incumplir con dicha orden, los intereses y honorarios de abogado se entendían como renunciados. En vista de lo anterior, el 2 de mayo de 2025, el TPI emitió y notificó una *Orden* en la cual dispuso que dichas cantidades se entendían como renunciadas.

Según expusimos en nuestra exposición doctrinal previa, la Regla 39.2 (a) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2 (a), faculta a los tribunales para desestimar el pleito o cualquier reclamación contra el demandado o la eliminación de las alegaciones. Puntualizamos que dicha regla dispone que, **cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan sólo procederá después que el**

**tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o la abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que ésta no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones.**

Reiteramos que, si bien los tribunales tienen el poder discrecional de desestimar una demanda o eliminar las alegaciones de una parte, lo cierto es que dicha medida disciplinaria debe prevalecer únicamente en situaciones extremas en las cuales haya quedado demostrado de manera clara e inequívoca la desatención y el abandono total de la parte con interés. Tras haber examinado minuciosamente los autos ante nuestra consideración, concluimos que, en este caso, la parte apelante nunca fue debidamente informada ni apercibida de las consecuencias que podía acarrear el incumplimiento con la orden emitida en la Conferencia Sobre el Estado de los Procedimientos, celebrada el 17 de marzo de 2025. Por lo anterior, se violaría el debido proceso de ley de AJ Service al imponer tan severa sanción de eliminar las alegaciones de dicha parte sin antes ser **debidamente apercibida de la situación y de las consecuencias que podía tener el que ésta no sea corregida.** Asimismo, se le estaría privando de la oportunidad de un día en corte para hacer valer en los méritos la legitimidad de su derecho a reclamar. Ante ello, disponemos que le asiste la razón a la parte apelante en lo relativo a los primeros (7) señalamientos de error, así como el *noveno* señalamiento.

En consideración al análisis que realizamos con el propósito de atender los errores antes mencionados, consideramos que los planteamientos formulados en el *octavo* error no requieren ni ameritan discusión ulterior. Así las cosas, corresponde revocar la *Orden*, emitida y

notificada el 2 de mayo de 2025, así como la *Sentencia Final* y la *Resolución Interlocutoria,* ambas emitidas y notificadas el 27 de mayo de 2025. En consecuencia, corresponde devolver el caso ante la consideración del TPI, para la continuación de los procedimientos.

**IV**

Por los fundamentos que anteceden, se revoca la *Orden*, emitida y notificada el 2 de mayo de 2025, así como la *Sentencia Final* y la *Resolución Interlocutoria,* ambas emitidas y notificadas el 27 de mayo de 2025, y se devuelve el caso al foro primario para la continuación de los procedimientos, en armonía con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones